1  Howard E. King, Jr., Esq. (SBN 103002)
   **Law Offices of Howard E. King**
2  402 West Broadway, Suite 860
   San Diego, CA 92101
3  Tel:   (619) 236-9883
   Fax:   (619) 236-9012
4

5  Patrick N. Keegan, Esq. (SBN 167698)
   **KEEGAN & BAKER, LLP**
6  6870 Embarcadero Lane
   Carlsbad, California 92011
7  Te:    (760) 929-9303
   Fax:   (760) 929-9260
8

9  James P. Frantz, Esq. (SBN 87492)
   **FRANTZ LAW GROUP,**
10 **A Professional Law Corporation**
   402 West Broadway, Suite 860
11 San Diego, California 92101
   Tel:   (619) 233-5945
12 Fax:   (619) 525-7672

13
   Attorneys for Plaintiffs
14 [Additional Attorneys Listed on Next Page]

15                    UNITED STATES DISTRICT COURT

16                 SOUTHERN DISTRICT OF CALIFORNIA

17
   ROSEMARY COHORST, CHARMAINE          Case No. 3:10-cv-2666-JM-BGS
18 GRIFFITH, and DEIDRE QUENELL, on
   behalf of themselves and all others similarly   **MEMORANDUM OF POINTS AND**
19 situated,                            **AUTHORITIES IN SUPPORT OF JOINT**
                                        **MOTION FOR APPROVAL OF CLASS**
20              Plaintiffs,             **ACTION SETTLEMENT**

21        vs.                          Date:   April 26, 2011
                                       Time:   12:30 p.m.
22 BRE PROPERTIES, INC., a Maryland    Place:  Judicate West
   corporation; L1 HOLDING, INC., a South
23 Carolina corporation; LEVEL ONE, LLC, a   Hon. Herbert B. Hoffman, Ret. (Special
   Southern Carolina limited liability company;   Master)
24

25              Defendants.

26

27

28

John Nadolenco, Esq. (SBN 181128)
Bronwyn F. Pollock, Esq. (SBN 210912)
Evan M. Wooten, Esq. (SBN 247340)
MAYER BROWN, LLP
350 South Grand Avenue, Suite 2500
Los Angeles, CA 90071
Tel: (213) 229-9500
Fax: (213) 625-0248
Attorneys for Defendant BRE Properties, Inc.

Tim J. Vanden Heuvel, Esq. (SBN 140731)
vanden@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
701 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 233-1006
Fax: (619) 233-8627
Attorney for Defendants L1 Holding, Inc. and Level One, LLC

Jon P. Kardassakis, Esq. (SBN 90602)
kardassakis@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012
Tel:      (213) 680-5040
Fax:      (213) 250-7900
Attorney for Defendants L1 Holding, Inc. and Level One, LLC

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Rosemary Cohorst, Charmaine Griffith, and Deidre Quenell (hereinafter collectively referred to as "Plaintiffs") and Defendants BRE Properties, Inc., ("BRE"), L1 Holding, Inc. ("L1"), Level One, LLC ("Level One") (hereinafter collectively referred to as "Defendants") respectfully submit this memorandum in support of their motion for preliminary approval of the proposed settlement between BRE,L1, Level One, and RealPage, Inc. ("RealPage") and the class defined as "all persons (i) who, while physically located in or while residing in California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, Nevada, New Hampshire, Pennsylvania, or Washington, made or received telephone calls that were handled by any Defendant between January 1, 2003 and February 9, 2011, and (ii) who did not receive notice that their telephone conference was being recorded or monitored" (the "Class"),[1] and for approval of the form and manner of notice of the proposed settlement to be provided to the members of the Class.

## I.
## INTRODUCTION

After intensive negotiations instituted soon after the commencement of this case, including two days of mediation conducted under the supervision of Hon. Herbert B. Hoffman (Ret.), a well-respected class action mediator, Plaintiffs have reached a settlement with Defendants. Specifically, on January 21, 2011 and February 1, 2011, the parties, having agreed to engage in private mediation in an attempt to avoid the expense attendant to complex class litigation such as this matter would be beneficial to all, met with Hon. Herbert Hoffman (Ret.). If finally approved by the Court, the settlement will resolve all of the claims alleged against the Defendants in exchange for consideration in the amount of $5,500,000.00.

---

[1] Defendants agree that the Settlement reflects a full and fair compromise of the released claims and that the class should be certified for purposes of settlement only. Defendants' joinder in this motion, is not, should not be construed as, an admission of any fact, allegation, contention of law, or liability of any kind. In the event the Settlement is not preliminarily or finally approved, or otherwise not performed or executed, Defendants reserve all rights to object to and/or oppose class certification in this or other litigation.

3

Given the value of the settlement, the recommendation of the mediator, and the disputed issues of liability and damages, the proposed settlement represents an outstanding result achieved by Plaintiffs' counsel. For the reasons addressed below, the parties request the Court to: (1) grant preliminary approval of the settlement; (2) approve the form and manner of notice of the settlement to be provided to the Settlement Class members; and (3) schedule a fairness hearing.

## II.
## SUMMARY OF RELEVANT FACTS

On or about November 17, 2010, a putative class action Complaint was filed against Level One (erroneously sued as Level One, LLC), L1, BRE, and RealPage in the Superior Court of the State of California, County of San Diego, thereby commencing a civil action entitled *Rosemary Cohorst, on behalf of themselves and all others situated v. BRE Properties, Inc., et al.*, Case No. 37-2010-00061964-CU-BT-NC (the "Action"). The Complaint alleged, among other things, that Defendants recorded telephone communications without the knowledge or consent of all of the parties to the telephone communication. The Complaint asserted claims for alleged violations of California Penal Code § 630 *et seq.*; negligence; common law invasion of privacy; and California Business & Professions Code § 17200 *et seq.* The Complaint purported to represent a class composed of all persons in California whose inbound or outbound telephone conversations were monitored, recorded, eavesdropped upon and/or wiretapped without their consent by Defendants since November 12, 2006.

On or about December 16, 2010, BRE answered the Complaint denying all allegations therein and asserting certain affirmative defenses.

On or about December 27, 2010, Level One and L1 removed the Action to the United States District Court for the Southern District of California, Case No. 3:10-cv-02666-JM-BGS.

On or about January 4, 2011, Plaintiff Rosemary Cohorst filed a Notice of Voluntary Dismissal of Defendant RealPage, Inc. giving notice pursuant to Federal Rule of Civil Procedure

41(a)(1) that Plaintiff Rosemary Cohorst voluntarily dismissed the action, without prejudice, as to Defendant RealPage, only.

The Parties participated in two sessions of formal mediation supervised by the Hon. Herbert Hoffman (Ret.), and engaged in extensive negotiations. With the assistance of the mediator, the parties were able to reach an agreement in principle and executed a term sheet on February 9, 2011 which was subject to confirmatory discovery. As a result, Plaintiffs propounded informal written discovery, took the deposition of a FRCP Rule 30(b)(6) witness of Defendant Level One and reviewed thousands of pages of data before entering into negotiations on the language of the final settlement agreement. A Settlement Agreement and Release dated effective February 9, 2011 (the date of the execution of the term sheet) was ultimately executed by all the parties in late March, 2011.

On or about March 31, 2011, Plaintiffs filed their First Amended Class Action Complaint. On April 18, 2011, at the Parties' request, the Court appointed the Hon. Herbert Hoffman (Ret.) to serve as Special Master per Fed. R. Civ. P. 53. The Special Master was appointed to assist with all settlement issues, including issuing necessary reports and recommendations on proposed findings and orders in the case.

## III.
## THE RECOMMENDATIONS OF COUNSEL

Plaintiffs believe the claims asserted in the Action have merit and that the evidence developed to date supports the claims asserted. However, Plaintiffs' Counsel recognize and acknowledge the uncertainty of prevailing on their claims due to the defenses that have been or could be asserted by the Defendants. Further considerations supporting the decision to enter into the settlement described herein were the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals. Based on their evaluation and the mediations that took place before Hon. Herbert Hoffman (Ret.), Plaintiffs'

counsel believes that the settlement set forth in the Settlement Agreement and Release (the "Agreement") confers substantial benefits upon Plaintiffs and the Class and is in the best interests of Plaintiffs and the Class.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs in this Action. Nonetheless, Defendants have concluded that further conduct of the Action would be protracted, expensive, a distraction to management and a drain on Defendants' resources, and that it is desirable that the litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this litigation. Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in the Agreement.

## IV.
## SUMMARY OF LEAD COUNSEL'S INVESTIGATION AND DISCOVERY

Prior to the settlement, Plaintiffs' Counsel conducted an intensive investigation of Plaintiffs' claims *without receiving any payment for their services or reimbursement of their costs incurred for the benefit of the Settlement Class*. Plaintiffs propounded informal written discovery, took the deposition of a FRCP Rule 30(b)(6) witness of Defendant Level One and reviewed thousands of pages of data.

## V.
## DISCUSSION

### A.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

There is an overriding public interest in settling and quieting litigation, particularly in class actions. *In re Michael Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953

6

(1992); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Specifically, the Ninth Circuit has stated that "[w]hen reviewing complex class action settlements, we have a strong judicial policy that favors settlements." *In re Pacific Enterprises Sec. Lit.*, 47 F.3d 373, 378 (9th Cir. 1995).

Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026, (9th Cir. 1998). For the purpose of preliminary approval, the Court must decide whether the settlement is *possibly* fair, reasonable and adequate, that is, whether it is "within the rage of possible approval." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). The Court's function now is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* (citation omitted).

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the Settlement.

*Manual for Complex Litigation, Third*, § 30.41 at p. 237 (1995); *see, In re Baldwin-United Corp. Sec. Lit.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984) ("Upon consideration of the proposed settlement presented to this court for preliminary approval, the Court finds that it is at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.").

Final approval of the settlement, following a fairness hearing pursuant to Rule 23(e) (the "Settlement Hearing"), is a matter for the exercise of the trial court's discretion and which is done in recognition of the policy encouraging settlement of disputed claims. *Michael Milken & Assoc.*, *supra*, 150 F.R.D. at 53; *see, In re Warner Communications Sec. Lit.*, 798 F.2d 35, 37 (2d Cir.

1  1986) ("It is not the district judge's job to dictate the terms of a class settlement"). When

2  considering settlement at the Settlement Hearing, the Court's primary concern is whether a

3  settlement, taken as a whole, is fundamentally fair, adequate and reasonable to all concerned.

4  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220

5  (1992); *Class Plaintiffs, supra*, 955 F.2d at 1276; *Officers for Justice v. Civil Service Commission*,

6
7  688 F. 2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); and *In re Wash. Public*

8  *Power Supply Sys. Sec. Lit. ("WPPSS")*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

9       To this end, the Court must consider a number of fairness factors, including: (1) the

10  strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

11  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

12  in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

13  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

14  reaction of the class members to the proposed settlement. *Officers for Justice v. Civil Serv.*

15
16  *Comm'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir.1982). The Ninth

17  Circuit has made clear that these factors are not an exhaustive list of relevant considerations and

18  that [t]he relative degree of importance to be attached to any particular factor will depend on the

19  unique circumstances of each case. *Id.*; *see, Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376*

20  (9th Cir.1993).

21       However, the district court's role in intruding upon what is otherwise a private consensual

22
23  agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not

24  the product of fraud or collusion between the negotiating parties, and that the settlement, taken as

25  a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler,* 92 F.3d 1503, 1506

26  (9th Cir.1996). Therefore, the Settlement Hearing is not to be turned into a trial or rehearsal for

27  trial on the merits. *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir.1982).

28

Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice. *Id.*

Here, the settling parties have entered into a Settlement Agreement and Release dated February 9, 2011 (the "Agreement") that provides, subject to the Court's final approval of the proposed settlement pursuant to Rule 23(e), Defendants will pay $5,500,000.00, within fifteen (15) days of the Effective Date, to a non-interest bearing distribution account held by the third-party claims administrator, ILYM Group, Inc., for the benefit of the Class Members (the "Common Fund"). The Common Fund shall provide all monies necessary for the effectuation of settlement. The Common Fund shall be used to pay all financial consideration to the Class Members who submit valid and timely Claims Forms, the compensation to the Class Representatives, and all attorneys fees awarded to Class Counsel and costs, including but not limited to, costs of notice and costs of administration of the settlement, to effectuate the full and complete release of the claims asserted in the First Amended Class Action Complaint.

On the other hand, both sides recognize that the risks involved with further litigation are significant, in that Plaintiffs would have to prove every element of their claims and overcome all of Defendants' defenses on liability and damages. Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Settlement Class. In the circumstances of such a case as this, it may be preferable "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). The result offered by the settlement outweighs the various risks associated with continued litigation and protracted disputes concerning insurance coverage for these claims.

In any event, the Court will be in a position to fully evaluate the *Officers for Justice* factors at the Fairness Hearing, where it can consider the submissions by proponents and potential

opponents of the settlement and the reaction of the members of the Class.[1]  At this stage of the proceeding, the Court need only find that the proposed settlement fits "within the range of possible approval," *Armstrong*, 616 F.2d at 314, a test that the settlement here easily satisfies.

## B.    THE FORM AND MANNER OF SETTLEMENT NOTICE TO THE CLASS

The parties also seek approval of the form of the Notice of Class Action Settlement ("Class Notice"), Claim Form, and Short Form Notice, attached as Exhibits A, B, and C, respectfully, to the accompanying declaration of Patrick N. Keegan, Esq.  Rule 23 mandates notice to the class in Rule 23(b)(3) lawsuits, but the content and format have been left for practitioners and the trial courts to fashion, dependent on the functions for which the subsection was designed.  Both the Ninth Circuit and the Supreme Court are in accord that notice in a class suit must present a fair recital of the subject matter and proposed terms and give an opportunity to be heard to all class members.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177-1178 (9th Cir. 1977) (*citing Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974), *superseded on other grounds in Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).  Under Rule 23, the only items specifically required to be included in the notices as set out in paragraph (c)(2) are that:

> [T]he notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by specific date; (B) a judgment whether favorable or not will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel. Fed. R. Civ. P. 23(c)(2).

---

1   In addition, notice of the proposed settlement sent with the Class notice in litigation such as this case actually enhances absent class members' opt out rights because the right of exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement.  Unlike a class notice in a case that will be litigated (and which class members must decide to opt out or remain in the class without any indication as to the case's prospects), the description of the settlement in the Class notice will allow Class members to have some idea of what he or she sacrifices by opting out. *See, In re Baldwin-United Corp. Sec. Lit.*, 105 F.R.D. 475, 481 (S.D.N.Y. 1984) (absent class members "will have a more concrete basis for deciding whether to opt out of a plaintiffs' class") and *Holiday Magic, supra*, 550 F. 2d at 1177 (conclusion that appellants were adequately represented reinforced "by the fact that all class members were given the right to opt out *after* being apprised of the terms of the settlement. . . . This opportunity to opt out after knowing the terms of the proposed settlement . . . serves to protect the interests of the class members.").

As stated by the leading class action commentator, "[o]f primary importance in insuring that a particular format provides recipient class members with sufficient information to permit an intelligent decision in language framing the key elements in the proceedings with both clarity and objectivity." *Newberg on Class Actions, Fourth Edition*, § 8:31, pp. 251-252 (4th ed. 2002). Similarly, *Manual for Complex Litigation* instructs drafters that, "sufficient information about the case should be provided to enable class members to make an informed decision about their participation." *Manual for Complex Litigation, Third, supra*, §30.211, p. 225. Moreover, "[t]he notice should be 'neutral and objective in tone, and should neither promote nor discourage the assertion of claims.'" *Id. See also Advance Drywall Co. v. United States Gypsum Co.*, 565 F.2d 1123, 1124-25 (9th Cir. 1977); and *Newberg on Class Actions, Third Edition*, §8.31, p. 8-93 (3rd ed. 1992).

The parties contend that their proposed Class Notice complies with Rule 23(c)(2) and provides recipient class members with the requisite information in a clear and objective manner. The Class Notice, attached as Exhibit A to the accompanying declaration of Patrick N. Keegan, Esq., has been drafted to provide Class Members with a fair understanding of the action, the settling parties and the nature of the settlement. Furthermore, the proposed Notices also clearly detail which persons are eligible to participate and the rights and obligations that accompany such participation. *See, Michael Milken & Assoc.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice must be reasonably calculated to apprise the class of the pending action and to afford class members an opportunity to object); and *O'Brien v. National Property Analysts Partners*, 739 F. Supp. 896, 901 (S.D.N.Y. 1990) (notice need only contain a "very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses.") (Citation omitted).

Here, the proposed Class Notice complies with these requirements since the Class Notice has been drafted to provide Settlement Class Members with a fair understanding of the action, the parties, and the nature of the settlement. Furthermore, the proposed Class Notice also clearly details which persons are eligible to participate and the rights and obligations that accompany such participation.[2]

In regards to the manner of giving notice, where the membership of a class is not entirely known, such as in this case, notice by publication alone is adequate. *See*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); and *Zimmer Paper Products, Inc. v. Berger & Montague P.C.*, 758 F.2d 86, 91 (3d Cir.), *cert. denied*, 474 U.S. 902 (1985). Similarly, the court in *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992) catalogued five cases where publication or posting was the only form of notice and went on to state that "there is no question that publication notice is constitutionally sufficient as to those persons who cannot be identified and therefore individually notified." *Id.* at 550-551.[3]

---

2　Similarly, California law requires simply that "meaningful" notice be given to the class. *See Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 861; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 974. "The principal purpose of notice to the class is the protection of the integrity of the class action process, one of the functions of which is to prevent burdening the courts with multiple claims where one will do." *Cartt*, 50 Cal.App.3d at 970. The "notice given to the class must fairly apprise the class members of the terms of the proposed compromise and of the options open to dissenting class members." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 252 (*citing Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*, 48 Cal.App.3d 134, 151-152); *see also In re Vitamin Cases* (2003) 107 Cal.App.4th 820, 828 ("The purpose of class notice in the context of a settlement is to give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."); *Hernandez v. Vitamin Shoppe Industries, Inc.* (2009) 174 Cal.App.4th 1441, 1455 ("The court must 'assure that the notice be "neutral and objective in tone, neither promoting nor discouraging the assertion of claims." . . . "It is essential that the class members' decision to participate or to withdraw be made on the basis of independent analysis of its own self-interest. . . . The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format."'" [citations omitted]).

3　California law is in accord. Civil Code § 1781(d) states that notice by publication may be ordered "if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally". *See also, Wershba v. Apple Computer, Inc., supra*, 91 Cal.App.4th at 251; *Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 285; *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 861; and *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (the Supreme Court noted with approval the California authorities cited by plaintiff that notice by publication may be constitutionally

Here, Plaintiffs' proposed methods used to give notice to the members of the Class are extensive and well within precedent. Plaintiffs propose that a combination of methods be utilized to give to the Class members, *i.e.* by e-mail and publication.

First, the parties propose to give notice by e-mail of the Class Notice and Proof of Claim Form (attached as Exhibits "A" and "B" respectfully to the Declaration of Patrick N. Keegan). The Parties have identified a significant number of members of the Class by name and telephone number. They have compiled approximately 1.1 million e-mail addresses for Class members from the records of Level One. The Parties seek to give notice to these same email addresses that the Class members originally used to correspond with Level One. Since the Parties are not in possession of the Class members' mailing addresses, making email notification particularly necessary and proper in the present case. *See Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1128 -1129 (N.D.Cal.,2009)(Court approves notice by email, stating, "[t]he potential class members...are likely to be particularly comfortable communicating by email and thus this form of communication is just as, if not more, likely to effectuate notice than first class mail."); *Browning v. Yahoo! Inc.*, 2006 WL 3826714, *8 (N.D.Cal. 2006)(Court approves email notice, noting that notice by email is, "extensive, multifaceted, and innovative" and "constitutes the best practicable notice under the circumstances of this case and notice in a reasonable manner."); *Farinella v. Paypal, Inc.*, 611 F.Supp.2d 250, 257 (E.D.N.Y.,2009) ("Court is satisfied that potential class members in this case are uniquely suited for email notification because (1) their interactions with

---

permissible whether or not the names and addresses of class members are readily ascertained). The standard is whether the notice has "a reasonable chance of reaching a substantial percentage of the class members." *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 974; and *Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at 251. However, it is not necessary to show that each member of a class has received notice. *Cooper v. American Sav. & Loan Assn.*, *supra*, 55 Cal.App.3d at 284; *Dunk*, *supra*, 48 Cal.App.4th at 1805, and *Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at 251. In *Wershba v. Apple Computer, Inc.*, notice was mailed directly to known class members and also published in *USA Today*. In addition, Apple also posted notice on its internet homepage for over 30 days. Similarly in *Dunk*, the court approved notice by publication.

13

the defendants have exclusively or predominantly been via email and over the internet and (2) while the email addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not.") Level One shall provide to the Claims Administrator all such e-mail addresses Level One has in its possession for persons who may be Class Members. Therefore, the Parties propose sending a copy of the Class Notice and Claim Form to a subset of potential Class Members by e-mail. The e-mails shall bear a phrase in the subject heading that is in bold type, and that attracts attention and sufficiently describes the importance of the legal notice and class action settlement.

Second, in addition to the e-mail dissemination of the Class Notice and Proof of Claim Form, the parties also propose publishing the Short Form Notice, (attached as Exhibit C to the accompanying declaration of Patrick N. Keegan, Esq.), nationally in the USA Today on three different days. The proposed Short Form Notice, to be published in a black and white in a 1/6 of a page size advertisement, includes the web address of the Claims Administrator's website, where the Claim Form can be obtained, or accessed, filled out, and submitted by the members of the Class. It is believed that such a published summary notice will have the broadest reach to inform those members of the Settlement Class.

Third, the Parties propose to give notice by publication of both the Class Notice and Proof of Claim Form (attached as Exhibits "A" and "B" respectfully to the Declaration of Patrick N. Keegan) on an Internet website to allow Class Members to obtain a copy of the Proof of Claim Form and information about the settlement to Class Members until September 8, 2011, the last day upon which Class Members may make a claim.

The Parties also requests that the Court authorize ILYM Group, Inc. (the "Claims Administrator") to supervise and administer the notice procedure as set out in detail in the proposed Order.

The parties further request that the Court set August 9, 2011 as the date by which members of the class may request that they be excluded from the class, and present objections to the proposed settlement, and setting August 25, 2011 as the date a date by which Plaintiffs must file their motion in support of final approval of the settlement and Plaintiffs' counsel must file their application for an attorneys' fees and costs, and incentive awards to the named Plaintiffs. The parties further request that the Fairness Hearing in this matter be set for September 8, 2011.

**VI.**

**THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

For purposes of the Settlement, the Parties seek to certify the following settlement class:

> all persons (i) who, while physically located in or while residing in California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, Nevada, New Hampshire, Pennsylvania, or Washington, made or received telephone calls that were handled by any Defendant between January 1, 2003 and February 9, 2011 and (ii) who did not receive notice that their telephone conference was being recorded or monitored (the "Class").

Because all elements of Rule 23 are met, this class should be certified at least for settlement purposes. Allowing the claims of Class members to proceed as a class action will help conserve judicial resources and avoid hearing many of the same cases - all of which are based on the same nexus of operative facts and legal claims - over and over again. Here, because the threshold requirements of Rule 23(a), and because at least one of the Rule 23(b) elements is satisfied, the Court is justified to certify Plaintiffs' claims for Rule 23 class action treatment.[2]

**A.   RULE 23(A) PREREQUISITES ARE MET**

Four threshold requirements of Rule 23(a) must be met: numerosity, commonality, typicality, and adequacy of representation. If these prerequisites are met, together with one of the

---

[2]   Defendants agree that the Settlement reflects a full and fair compromise of the released claims and that the class should be certified for purposes of settlement only. Defendants' joinder in this motion, is not, should not be construed as, an admission of any fact, allegation, contention of law, or liability of any kind. In the event the Settlement is not preliminarily or finally approved, or otherwise not performed or executed, Defendants reserve all rights to object to and/or oppose class certification in this or other litigation.

three provisions of Rule 23(b), a court must certify the suit as a class action without regard to the underlying merits of the claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974).

### 1. The Numerosity Requirement is Met.

The first requirement of Rule 23(a) is that the class is sufficiently numerous that joinder of all members individually would be impracticable. Fed. R. Civ. P. 23(a)(1). As long as there are at least forty class members, the numerosity requirement is presumptively met. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995); *see also Breeden v. Benchmark Lending Group, Inc.,* 229 F.R.D. 623, 628 (N.D. Cal. 2005) ("[G]enerally speaking, classes consisting of more than 75 members usually satisfy the numerosity requirement....").

Here, Defendant Level One has identified approximately 1.1 million email addresses for Class members in response to Plaintiffs' discovery. (Declaration of Patrick N. Keegan ("Keegan Decl."), at 3). Hence, joinder of all these persons, individually, is impracticable because the sheer size of the class would impose insurmountable practical difficulties associated with representation of thousands of Class members and their individual counsel, each of whom is likely to bring individual motions and discovery plans before the Court. Moreover, multiple litigation plans would subject Defendants to respond to duplicative and unduly burdensome discovery requests. Numerosity is satisfied.

### 2. The Commonality Requirement is Met.

Rule 23(a)(2) requires that some questions of fact and law common to the class exist. Rule 23(a)(2) is to be construed permissively. The mere existence of shared legal issues - even with divergent factual predicates - is sufficient. *Breeden,* 229 F.R.D. at 629 (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998)). Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir. 1964).

Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23. *Hanlon*, 150 F.3d at 1019.

Plaintiffs contend that the common questions of law and fact common that pervade in this case include, among others:

> (a) Whether Level One Defendants have or had a policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls;
>
> (b) Whether Level One Defendants disclosed to callers and/or obtained their consent that their incoming and/or outgoing telephone conversations were being recording, wiretapping, eavesdropping upon and/or monitored;
>
> (c) Whether LEVEL ONE DEFENDANTS policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls constituted a violation of California Penal Code §§ 630 *et seq.*; Connecticut Gen. Stat. Ann. §§ 52-570d (a) *et seq.*; Florida FSA §§ 934.10 *et seq.*; Illinois 720 ILS 5/14-2(a), *et seq.*; Maryland Code Ann., Courts and Judicial Proceedings § 10-410 *et seq.*; Massachusetts MGLA 272 §§ 99 *et seq.*, Michigan Mich. Comp. Laws section 750.539h, *et seq.*; Montana Code Ann. §§45-8-213c *et seq.*; Nevada Rev. Stat. §§ 220.620, 220.690 & 48.077; New Hampshire Rev. Stat. Ann. §§ 570-A:2 (1-a) and A:11; Pennsylvania 18 PA. C.S.A. §§ 5725, *et seq.*; and Washington Rev. Code Ann. § 9.73.030 (1)(a);
>
> (d) Whether Level One Defendants' policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls constitutes violation of California Business and Professions Code §§ 17200 et seq.;
>
> (e) Whether Level One Defendants' policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls constitutes an invasion of privacy;
>
> (f) Whether Defendant BRE Properties, Inc. is liable for the actions of Level One Defendants; and
>
> (g) Whether Plaintiffs and the Class are entitled to damages, and/or injunctive relief.

(FAC, ¶19). The overriding common legal theory here is that it is alleged that Defendants, and each of them, through the actions of Level One, LLC in recording and/or monitoring the calls set forth above, were in violation of statutory law, including but not limited to California Penal Code §§ 630 *et seq.*; Connecticut Gen. Stat. Ann. § 52-570d(a), *et seq.*; Florida FSA §§ 934.10, *et seq.*;

17

Illinois 720 ILS 5/14-2(a), *et seq.*; Maryland Code Ann., Courts and Judicial Proceedings §§ 10-410, *et seq.*; Massachusetts MGLA 272 §§ 99, *et seq.*; Michigan Mich. Comp. Laws section 750.539h, *et seq.*; Montana Code Ann. §§ 45-8-213c, *et seq*; Nevada Rev. Stat. §§ 220.620, 220.690, 48.077, 707.900, *et seq.*; New Hampshire Rev. Stat. Ann. §§ 570-A:2 (1-a), and A:11, *et seq.*; Pennsylvania 18 PA. C.S.A. §§ 5703, *et seq.*; and Washington Rev. Code Ann. §§ 9.73.030 (1)(a), *et seq.*

Plaintiffs contend that these common issues and questions pervade the Class, and adjudications on behalf of one person will be properly applied to the situations of all. Because, under this theory, findings with regard to these core factual and legal issues can be applied class-wide to the Class, the judicial economy sought through the class action mechanism will be promoted, and Rule 23(a)(2) will have been satisfied.

### 3. Typicality Requirement is Met.

Rule 23(a)(3) requires that the claims of the named Plaintiffs are typical of those of the class. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The typicality requirement tests whether other members have the same or similar injuries, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1985).

Here, Plaintiffs, and the Class they intend to represent, all are alleged to have made or received telephone calls that were handled by Defendants between January 1, 2003 and February 9, 2011 and did *not* receive notice that their telephone calls were being recorded or monitored. Plaintiffs contend the same conduct - Defendants' alleged decision to recorded or monitored the Class' telephone conversations without their knowledge - caused the same alleged injuries to all

18

Class members. Rule 23(a)(3) also is satisfied, although, as noted above, Defendants would challenge such a determination if this matter were not ultimately resolved by way of this Settlement.

Moreover, Plaintiffs assert that the named Plaintiffs' claims are common to and typical of those of the entire class, not just class members from California. Thus, there is no issue in this case like the one recently addressed by the Ninth Circuit in *Hesse v. Sprint*, 598 F.3d 581, 584 (9th Cir. 2010), which violated a nationwide settlement as to plaintiffs from the state of Washington, finding that the typicality and commonality of the nationwide class were lacking in light of the Washington claims. The *Hesse* plaintiffs brought claims regarding Sprint's practice of billing consumers for a Washington state tax, although Sprint previously had settled a nationwide class action in a Kansas court regarding its direct-billing for certain federal taxes and fees. *Id.* The Ninth Circuit found that the plaintiffs in the previous Kansas litigation were inadequate class representatives, because they did not possess the same type of claim as the Washington plaintiffs and therefore has a conflict of interest. *Id.* at 589.

Here, however, the claims of all the class members are based on exactly the same purported acts (unconsented to recording of telephone calls) and are predicated on nearly identical legal frameworks. In addition, unlike in *Hesse*, none of the class members have claims in addition to the claims held by the named Plaintiffs. Therefore, the named Plaintiffs here have no incentive to settle at the expense of those additional claims. Furthermore, while the named plaintiff in the Kansas litigation may have settled his claims "even at the cost of a broad release of other claims he did not possess," *id.*, the named Plaintiffs here explicitly address those claims held by out-of-state class members in their settlement. Therefore, the concerns expressed by the Court in *Hesse* have absolutely no application to the Settlement and do not preclude approval of the Settlement in this case.

Indeed, Plaintiffs contend that the only way the claims of the named Plaintiffs diverge in any way from the claims of the class is to the extent the named Plaintiffs' claims are subject to the larger measure of statutory damages available under the California Penal Code than the laws of the other so-called two-party consent states. Under California Penal Code section 637.2, a plaintiff is entitled to the greater of $5,000 or three times actual damages for violations of the underlying prohibition. Four of the two-party consent states (Connecticut, Illinois, Michigan, and Montana) do not have any similar minimum damage threshold for violations of their prohibitions on unconsented to recording. In the other seven two-party consent states that have statutes addressing the measure of damages (Florida, Maryland, Massachusetts, Nevada, New Hampshire, Pennsylvania and Washington), all of them have minimum damages amounts measured in terms of $1,000 or $100 per day of violation.

Defendant Level One contends that because the vast majority of telephone call recordings made by Level One were never accessed or listened to by even a single human being, much less used for any reason, actual damage claims by anything other than a tiny percentage of members of the class would be extremely unlikely and then the amount of actual damages would likely be highly speculative. Thus, and although Plaintiffs would not acquiesce to this position in the context of a litigated resolution, the parties do believe that the Settlement is reasonably based on addressing and compensating the claims of class members predicated on the minimum amount of damages specified by the various statutes at issue.

On this basis, it appears that California class members whose claims are within the applicable statute of limitations pursuant to California Penal Code section 637.2 are reasonably treated for purposes of the Settlement as having claims worth 5 times the amount of the claims held by class members in other two party consent states. That is because the statutory scheme of $1,000 or $100 per day of violation embodied in the applicable two party consent statutes has been

read by the courts to allow for a maximum claim of $1,000 (unless the statute was violated for more than 100 days with respect to a particular plaintiff). *See Noel v. Hall*, No. CV99-649-AS, 2005 WL 2007876, *2 (D. Or. Aug. 16, 2005) (wire tap provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, authorized recovery of single statutory penalty per plaintiff "regardless of the number of violations") and cases cited therein. As a result, members of the California class with claims within the statute if limitations have claims that at least on their face are 5 times greater than the value of the claims held by non-California class members. Accordingly, the Settlement has fairly addressed this disparity in its distribution formula set forth in Paragraphs 3.3-3.5 which provides for distributions to California class members with claims within the statute of limitations in an amount that is 5 times greater than the amount available to non-California class members.

### 4. The Adequacy Requirement is Met.

Rule 23(a)(4) requires that the named representatives and their counsel will adequately represent the interests of the class. Plaintiffs assert that adequacy is satisfied here because the named Plaintiffs have no known conflicts with members of the Class and will fairly and adequately protect the interests of the Class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2001). Further, Plaintiffs' counsel is adequate to service the litigation needs of the Class and to prosecute their claims. For example, Patrick N. Keegan, Esq., Keegan & Baker, LLP, is vastly experienced in prosecuting class action and collective actions all over the country, including privacy cases. (Keegan Decl., ¶¶ 11-13).

Accordingly, all requirements of Rule 23(a) are satisfied at least in the context of this proposed Settlement for which Defendants have agreed to certification only as part of the overall and final resolution of this matter.

## B.     THE RULE 23(B) REQUIREMENTS ARE ALSO MET.

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three elements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3) because common questions predominate and class action treatment is superior to individual adjudication of the claims. Fed. R. Civ. Proc. 23(b)(3). Under this provision, "[i]n determining whether plaintiffs have carried their burden, the Court may not consider the merits of plaintiffs' claims." *Mateo v. M/S Kiso*, 805 F.Supp. 761, 771 (N.D. Cal. 1991) (citing *In re Unioil Securities Litigation*, 107 F.R.D. 615, 618 (1985)). "Instead, 'the court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that plaintiff may be altogether unable to prove his allegations.'" *Id.* (quoting *In re Unioil Sec. Litigation*, 107 F.R.D. 615, 618 (1985)); *see also Blackie v. Barrack*, 24 F.2d 891, 901 n. 17 (9th Cir. 1975).

### 1.     Common Questions Predominate.

"The Ninth Circuit has endorsed the proposition that when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Breeden*, 229 F.R.D. at 628 (citing *Hanlon.*, 150 F.3d at 1022). The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

Here, Plaintiffs contend that any one of the common questions identified above predominate over any individual issues that may exist in this case. The fundamental issue here is whether Defendants recorded or monitored its telephone conversations with the Class without their knowledge.

/////

/////

**2.  A Class Action is the Superior Method of Adjudication.**

Rule 23(b)(3) provides four factors to consider in determining if a class would be superior: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.   Fed. R. Civ. Proc. 23(b)(3).

In addition, Plaintiffs view class treatment as especially appropriate here since there is another pending action in this state that has been filed as a class action, namely *Roman v. BRE Properties, Inc., et al.*, C.D. Cal. Case No. 11-cv-03103 MRP (formerly Los Angeles County Superior Court Case No. BC438089), which asserts alleged violations of Penal Code § 630 *et seq.*, invasion of privacy and negligence against Level One, BRE and Multifamily Technology Solutions, Inc.  Those claims and parties are included in the proposed Settlement.

## VII.
## CONCLUSION

Based on the foregoing, the Court should enter the order preliminarily approving the settlement and form of the Class Notice, Claim Form, and Short Form Notice submitted by the parties and set the following dates: (1) e-mail notification of the Class Notice and Claim Form shall be on or before June 10, 2011; (2) publication of the Short Form Notice in USA Today for at lease a period of three days in a black and white notice of at least 1/6 of a page shall be completed on or before June 10, 2011; (3) creation of a website dedicated to giving notice of this settlement by causing a copy of the Notice of Settlement and Proof of Claim Form, in substantially similar form as filed with the motion for preliminary approval, to be posted on such website on or before May 27, 2011; (4) objections to the settlement and requests for exclusion from the Class must be filed with the Court and served on the parties' counsel no later than August 9, 2011; (5) requests

for exclusion from the Class must be must be returned by mail to the Claims Administrator postmarked on or before August 9, 2011; (6) filing of the papers in support of final approval of settlement and Class counsels' motion for an award of attorney's fees and costs, and incentive awards to the Class Representatives shall be on or before August 25, 2011; (7) Proof of Claim Forms must be postmarked or electronically submitted by no later than September 8, 2011; and (8) the Final Fairness Hearing will be held on September 8, 2011 at 1:30 p.m., in Courtroom 16 of the District Court for the Southern District of California, located at 940 Front Street, San Diego, California 92101.

Dated: April 22, 2011                     KEEGAN & BAKER, LLP

/s/ Patrick N. Keegan
Patrick N. Keegan, Esq.
Attonrey for Plaintiffs
Rosemary Cohorst, Charmaine Griffith, and
Deidre Quenell

Dated: April 22, 2011                     MAYER BROWN, LLP

/s/ Evan M. Wooten, Esq.
John Nadolenco, Esq.
Bronwyn F. Pollock, Esq.
Evan M. Wooten, Esq.
Attorneys for Defendant BRE Properties, Inc.

Dated: April 22, 2011                     LEWIS BRISBOIS BISGAARD & SMITH, LLP

/s/ Tim J. Vanden Heuvel, Esq.
Tim J. Vanden Heuvel, Esq.
Jon P. Kardassakis, Esq.
Attorneys for Defendants L1 Holding, Inc. and
Level One, LLC