

FILED

JUL 1 9 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

| | |
|---|---|
| ROSEMARY COHORST, on behalf of themselves and all others similarly situated,<br><br>**PLAINTIFFS;**<br><br>V.<br><br>BRE PROPERTIES, INC., a Corporation, L1 HOLDING, INC., a South Carolina Corporation, LEVEL ONE, LLC, a South Carolina Limited Liability Corporation REAL PAGE, INC., a Corporation, and DOES 1 through 100, inclusive,<br><br>**DEFENDANTS.** | **CASE NO. 3:10-CV-2666-JM-BGS**<br><br>**REPORT AND RECOMMENDATION BY SPECIAL MASTER RE: MOTION TO INTERVENE BY PROPOSED INTERVENOR-PLAINTIFF LUMINITA ROMAN** |

20

21

## I.

22

## PRELIMINARY STATEMENT

23

24

25

26

27

28

On May 19, 2011, Proposed Intervenor-Plaintiff Luminita Roman filed an *Ex Parte* Application to Shorten Time [Doc. No. 28] on her Motion to Intervene or, in the Alternative, to Stay the May 4, 2011 Order entered by the Honorable Jeffrey T. Miller, United States District Court Judge, preliminarily approving the settlement herein [Doc. No. 27]. On May 24, 2011, Judge Miller entered an Order referring the Special Master for a report and recommendation pursuant to Fed.R.Civ., P. 53.

**REPORT AND RECOMMENDATION**

1       The Special Master held a status conference on May 27, 2011 for the purpose of setting a

2 briefing schedule to hear Proposed Intervenor-Plaintiff's *Ex Parte* Application on June 7, 2011.

3 The Special Master has received opposition briefs on June 2, 2011 filed on behalf of the Cohorst

4 Plaintiffs' and the Class, Defendant Level One, LLC and L1 Holding (Level One) which was joined

5 by Defendant BRE Properties Inc. (BRE). The Special Master also received Proposed Intervenor-

6 Plaintiffs' Reply Brief on June 6, 2011.

7       On June 10, 2011, after the *Ex Parte* hearing on June 7, 2011, the Special Master

8 recommended to the District Court that the *Ex Parte* Application to Shorten Time on the Motion to

9 Intervene be denied. The Special Master also recommended that Roman's Alternative Motion to

10 Stay the May 4, 2011 Order of Preliminary Approval be denied. The hearing on Roman's Motion

11 to Intervene was scheduled to be heard on July 11, 2011 after further briefing. On June 28, 2011,

12 the Motion to Intervene was rescheduled to July 18, 2011.

13 **II.**

14 **PROCEDURAL HISTORY OF THE ROMAN ACTION**

15       *Roman v. BRE Properties, Inc.* was originally filed in the Los Angeles Superior Court on

16 May 20, 2010. On June 9, 2010, the Superior Court designated the *Roman* action complex and

17 served a "Notice of Complex Designation" on June 17, 2010. On June 30, 2010, Superior Court

18 Judge Ann I. Jones entered an "Initial Status Conference Order" which stayed the proceedings to

19 assist the Court and the parties in managing the complex case. Judge Jones set an initial status

20 conference on October 8, 2010 and ordered the parties to meet and confer and file a joint report

21 which included "whether additional parties are likely to be added."

22       On October 1, 2010, Roman and BRE filed a "Joint Initial Status Conference Report" with

23 Superior Court Judge Jane Johnson to whom the *Roman* case had been reassigned. The report

24 reflects that counsel for Roman and BRE had previously met and had discussed that a number of

25 other potential parties to the case were identified. The initial status conference was held before

26 Judge Johnson who continued the stay on discovery except the stay was lifted for discovery

27 designed to identify potential additional parties to the *Roman* action.

28

-2-

**REPORT AND RECOMMENDATION**

1         On November 12, 2010, counsel for BRE provided Roman's counsel with a declaration by

2   Tyler L. Kemmer regarding BRE's telephone call intake practices including the involvement with

3   alleged recording of telephone calls from its customers by Level One, including telephone calls

4   made by Roman in April 2010 regarding BRE's Alessio Property in Los Angeles (Paragraph No.

5   14).  Mr. Kemmer was the Vice President of Operations Management for BRE Properties, Inc.  The

6   Special Master requested a copy of the declaration on June 3, 2011 from Attorney Evan Wooten

7   since it was referred to by counsel for Roman in the *Ex Parte* Application.

8         On December 9, 2010, BRE filed notices of Related Case in *Roman* and *Cohorst* state court

9   actions which states that the *Cohorst* case was filed on or about November 17, 2010 in the San

10   Diego Superior Court and was assigned to Judge Robert P. Dahlquist in the North County Division.

11   The Notice of Related Case also states that both actions assert purported violations of California

12   Penal Code section 630, et seq. asserted by California residents in connection with the alleged

13   recording of telephone calls regarding the rental of BRE residential properties.

14         On January 3, 2010, Judge Johnson ordered the *Roman* and *Cohorst* actions related which

15   was served on Roman's counsel by mail on January 5, 2011.  However, on December 27, 2010,

16   Level One had removed the *Cohorst* action to the federal court in San Diego mooting Judge

17   Johnson's order finding the case related.

18         On January 7, 2011, Roman and BRE filed a "Joint Status Conference Report" with Judge

19   Johnson which stated that Level One had removed the *Cohorst* action to Federal Court and that,

20   "Plaintiff is considering amending the complaint to add additional business entities as DOE

21   Defendants."

22         On January 26, 2011, Roman served counsel for BRE with an Amendment to her Complaint

23   to substitute Level One for Defendant DOE 2 as well as another amendment adding Multi-Family

24   Technology Solutions, Inc. as an additional Defendant.

25         On April 11, 2011, Judge Johnson held a status conference in the *Roman* action where the

26   Court was informed that Level One intended to remove the *Roman* action to Federal Court in Los

27   Angeles.  Judge Johnson was also informed that a settlement had been reached in the *Cohorst*

28

-3-

**REPORT AND RECOMMENDATION**

1   action.  Judge Johnson continued the existing Stay on discovery and set a further status conference

2   for April 26, 2011.

3        On April 11, 2011, Roman filed a Request for Dismissal of Level One from the *Roman*

4   action which was entered the same day.  On April 12, 2011, Level One, without knowledge of the

5   dismissal, removed the *Roman* action to the Federal Court in Los Angeles.

6        The removed *Roman* case to the Federal Court in Los Angeles was assigned to the

7   Honorable A. Howard Matz, United States District Court Judge.  Roman filed a Motion to Remand

8   the case to the Los Angeles Superior Court primarily because Level One, LLC was dismissed on

9   April 11, 2011 and the removal to the Federal Court pursuant to the Class Action Fairness Act

10  ("CAFA") was improper.

11       Level One filed an Opposition to Roman's Motion to Remand on the grounds that Level

12  One's dismissal was without judicial authority and without force or effect.  Level One has also filed

13  a Motion to Dismiss the *Roman* case based upon the settlement in the *Cohorst* case and the

14  preliminary Approval Order signed by Judge Miller on May 4, 2011.  Both motions were scheduled

15  to be heard by Judge Matz on June 27, 2011.

16       During the *Ex Parte* hearing on June 7, 2011, Roman's counsel, Paul R. Kiesel, represented

17  that he intended to dismiss the *Roman* action in Los Angeles and that Roman will either be an

18  intervenor or an objector in the *Cohorst* action going forward.  On June 10, 2011, a Stipulation of

19  Dismissal in *Roman* was executed by all counsel and submitted to the federal court.

20                                               **III.**

21                      **PROCEDURAL HISTORY OF THE COHERST ACTION**

22       On November 17, 2010, Rosemary Cohorst filed a punitive class action in the San Diego

23  Superior Court for the same causes of action as those in the *Roman* case.  In addition to naming

24  BRE as a Defendant, the Cohorst Plaintiffs named and immediately served Level One.  On

25  December 9, 2010, BRE filed a Notice of Related Case in both the *Roman* and *Cohorst* actions.

26       On December 27, 2010, Level One removed the *Cohorst* case to the Federal Court in San

27  Diego where it was assigned to the Honorable Jeffrey T. Miller, United States District Judge.  After

28  the removal to Federal Court, the parties in *Cohorst* participated in two days of private mediation

REPORT AND RECOMMENDATION

1   before the present Special Master on January 21, 2011 and February 1, 2011.  The parties reached a

2   tentative agreement on the second day of mediation and executed a term sheet on February 9, 2011

3   for a class wide settlement, subject to confirmatory discovery. The Settlement Agreement and

4   Release dated as of February 9, 2011, encompasses a twelve state class ("two-party consent states")

5   and would completely subsure all claims alleged in the *Roman* action against all Defendants in that

6   action.

7       The parties to the *Cohorst* action jointly filed a Motion for Preliminary Approval of the

8   Class Action Settlement on April 29, 2011 [Doc. No. 24]. Finding the settlement to be fair, proper

9   and reasonable, Judge Miller preliminarily approved the settlement on May 4, 2011 [Doc. No. 25].

10      Judge Miller's May 4, 2011 Order of Preliminary Approval instructed the Claims

11  Administrator to create a website giving notice of the settlement no later than May 27, 2011;

12  mandated publication of the settlement notice in *USA Today* three times prior to June 10, 2011; and

13  ordered the Claims Administrator to provide individualized email notice to the 1.1 million class

14  members with known email addresses no later than June 10, 2011.  Finally, the May 4, 2011 Order

15  set a deadline for objecting to the settlement on August 9, 2011 and the Final Fairness Hearing for

16  September 8, 2011.

17      **A.    Purpose for which Intervention is Sought**

18      Before addressing whether Roman has satisfied the Ninth Circuit's elements for intervention

19  "as of right" under Rule 24(a)(2) of the Federal Rules of Civil Procedure (FRCP), the Special

20  Master believes that the Court must understand for what purposes Roman seeks to intervene in this

21  action after the Court has granted preliminarily approval to the class action settlement (on May 4,

22  2011) and the claims administration process has been ongoing for over two months.

23      As best as the Special Master can gleam from the original Motion to Intervene filed on May

24  19, 2011 and the Supplemental Brief filed on June 17, 2011, Roman's intervention motion is sought

25  to accomplish the following:

26          1) For the Court to reconsider its May 4, 2011 Preliminary Approval Order and for

27  Roman to be added as an additional class representative and her counsel be added as class counsel;

28  and;

-5-

**REPORT AND RECOMMENDATION**

2) In order to accomplish (1) above, Roman seeks to enter the litigation as an original party to conduct discovery to develop evidence against approving the settlement in its present form. The wide ranging discovery envisioned by Roman includes discovery from Defendants concerning its call center operations and database structure; documents provided by the Defendants to current class counsel as part of due diligence discovery; documents and information relating to the settlement negotiations in January and February, 2011; and data gathered by the claims administrator relating to notice, claims made and inquires by class members.

**B.     Ninth Circuit's Elements for Intervention "as of right" under Rules 24(a)(2)**

In order to establish a right to intervene under the Federal Rules of Civil Procedure, an applicant has the burden of demonstrating; that:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010).
*United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

The Special Master finds that since Roman is a class member there is no dispute that she has a significant protectable interest relating to the property or transaction that is the subject of this action. As a class member she has a clear relationship between her claims and those of the class. See *Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006); *Doe v. Cin-Lan, Inc.*, 2011 U.S. Dist. LEXIS 835 *4.

The parties dispute the remaining three elements of the 9th Circuit's test for intervention as discussed below in this report and recommendation.

**C.     Whether the Deposition of the *Cohorst* Action may, as a Practical Matter, Impair or Impede Roman's ability to Protect her Interest.**

Roman seeks to protect her interest by asking Judge Miller to reconsider the proposed settlement as being inadequate and attacks the proposed attorney fees to class counsel. However,

REPORT AND RECOMMENDATION

1  what Roman must demonstrate is that her protectable interest would not be inadequately protected
2  absent intervention required by Rule 24(a).

3      The Opposition argues that a putative class member has no right to intervene in a class
4  action for purposes of objecting to a preliminarily approved settlement.  The Supreme Court in
5  *Devlin v. Scardelletti*, granted objectors in class actions the right to appeal without intervention.
6  536 U.S. 1, 12-13 (2002).  ("Just as class action procedure allows non-named class members to
7  object to a settlement at the Fairness Hearing without first intervening, it should similarly allow
8  them to appeal the District Court's decision to disregard their objections."

9      Other lower courts since *Devlin* was decided in 2002 have recognized that where the right to
10  object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is
11  simply unnecessary to protect a putative class member's interests.

12      In *Lane v. Facebook, Inc.*, 2009 U.S.Dist. LEXIS 103668 *4, like *Roman*, the "Proposed
13  Intervenors contend(ed) that they should be permitted to intervene to advance the  argument that
14  terms of the proposed settlement are contrary to public policy and are unfair, inadequate and
15  unreasonable." *Id* at *5.  The *Lane* Court found that the proposed intervenors "failed to establish
16  that their rights to raise these issues (were) not adequately protected through the process of
17  submitting objections that will follow upon preliminary approval of the settlement agreement." *Id*
18  at *20.  In *Davis v. J.P. Morgan Chase & Co.*, 2011 U.S. Dist. LEXIS 37704 (W.D.N.Y. Apr. 6,
19  2011), the Court denied intervention, stating: "Intervention is not necessary here to protect the
20  proposed intervenors' or other class members' interests, and there are alternatives open to them
21  which would be less disruptive to these proceedings and to the interests of the settling parties. *Id.*
22  at *6-7.

23      In denying intervention under similar circumstances, other District Courts have explained:
24  "Proposed Intervenors may simply choose not to join this action and will not be bound by it." *Doe
25  v. Cin-Lan, Inc., supra* at *11, or instead join the settlement and participate in the Fairness Hearing
26  as an objector to safeguard the class member's interests. *In re: Charles Schwab, Corp.*, 2011 U.S.
27  Dist. LEXIS 18840.

28

REPORT AND RECOMMENDATION

1    The Special Master notes that the deadline for Roman to object or opt out is August 9, 2011.

2    Accordingly, Roman should without intervention, have sufficient time to decide how to best protect

3    her interests by either objecting or opting out of settlement.

4    **D.    Whether Roman's Motion to Intervene is Timely**

5    Rule 24(a) requires the Motion to Intervene to be timely. A party seeking to intervene must

6    act "as soon as he knows or has reason to know that his interests might be adversely affected by the

7    outcome of the litigation." *California Dept. of Toxic Substances Control v. Commercial Realty*

8    *Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) citing *United States v. Oregon,* 913 F.2d 576 (9th

9    Cir. 1990).

10    The Ninth Circuit considers three factors in determining whether a motion for intervention

11    is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice

12    to other parties; (3) the reason for and length of the delay. See *League of United Latin American*

13    *Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997), *County of Orange v. Air California,* 799

14    F.2d 535, 537 (9th Cir. 1986).

15    Roman argues that her May 19, 2011 motion to intervene is timely pointing to the May 4,

16    2011 date that the Court preliminarily approved the settlement and granted class certification. It

17    was on May 4, 2011 that Roman became aware of the inadequate settlement terms and should mark

18    the beginning of the timeliness clock.

19    The Special Master has outlined for the Court the procedural history of the *Roman* action

20    which began on May 20, 2010 in the Los Angeles Superior Court. Roman has known of the

21    *Cohorst* action since at least December 9, 2010 and waited 162 days to file her motion to intervene.

22    Roman's state court action was filed only against BRE Properties and later added Level One as a

23    Doe Defendant on January 26, 2011. Roman then dismissed Level One on April 11, 2011 after a

24    status conference where BRE informed Roman's counsel that the *Cohorst* action had reached a

25    mediated settlement and the parties would be seeking preliminary approval (Wooten Declaration,

26    para. 15).

27    In Roman's motion to intervene, she claims that BRE engaged in stalling tactics to prevent

28    her from learning the identity of additional parties:

-8-

**REPORT AND RECOMMENDATION**

1

2

3

4

5

6

7

> [a]fter the *Roman* action was filed, counsel for Ms. Roman sought to actively litigate it while BRE attempted to engage in a stalling strategy.  For example, counsel insisted that Ms. Roman had sued the wrong entity and when pressed by Ms. Roman's counsel, a declaration was provided by BRE on this issue.  However, that declaration failed to substantiate the claims of counsel.  Pushing forward, counsel for Ms. Roman participated in meetings at defense counsel's offices, engaged in correspondence and appeared in Court as well.  Eventually, counsel for BRE advised Ms. Roman's counsel that the *Cohorst* action had been filed in San Diego Superior Court and that it had been removed.

8

(Roman Br. at 4 (citing Kiesel Decl. para. 7).

9

10

Roman's stalling allegations are dealt with in depth in BRE's Opposition at pages 2-6.  In

11

particular, BRE cites to a meeting of September 28, 2010 where BRE's counsel explained that BRE

12

did not record the telephone calls at issue which was acknowledged by Roman in the October 1,

13

2010 initial status conference report submitted to the Superior Court.

14

On November 12, 2010, "counsel for BRE provided (Roman's) counsel with a declaration

15

regarding BRE's telephone call intake logistics, including the involvement in the alleged recording

16

of telephone calls of potential third parties, such a Level One (Wooten Decl. at para. 9). The Special

17

Master has reviewed the declaration prepared by Tyler L. Kemmer, Vice President of Operations

18

Management for BRE Properties which informed Roman that BRE contracted with Level One:

19

20

21

22

23

> "to handle all advertising-generated phone calls from prospective customers" that BRE ha[d] no authority or control over whether Level One records or monitors calls placed to BRE leasing or maintenance hotlines or whether Level One gives notice of any such recording to callers"; and that "BRE ha[d] never authorized, directed or requested that Level One record calls placed to BRE leasing or maintenance hotlines or any other calls."

24

(Kemmer declaration at para. 14).

25

The *Cohorst* action was filed in the San Diego Superior Court on November 17, 2010 and

26

BRE counsel filed notices of related cases in the *Roman* and *Cohorst* state court actions and served

27

counsel for Roman by mail on December 9, 2010.  In light of the BRE declaration and Roman's

28

presumptive review of the *Cohorst* complaint, the Special Master concludes that Roman had

-9-

**REPORT AND RECOMMENDATION**

1   sufficient information to determine her legal position by late December 2010.  On January 26,

2   2011, Roman finally amended her complaint to substitute Level One for a Doe Defendant.  Three

3   months later, Roman filed her motion to intervene in *Cohorst* on May 19, 2011.

4        The Special Master cannot accept Roman's position that her Motion to Intervene is timely

5   simply because it was filed shortly after learning of the proposed settlement.  In *Alaviz v. Tillie*

6   *Lewis Fords*, 572 F.2d 657 (9th Cir. 1978), a group of employees sought to intervene following the

7   approval of a class action settlement.  The intervenors, like Roman, argued the motion was timely

8   since they did not know until settlement that the parties were not acting in the Intervenor's best

9   interests.  *Id.* at 659.  This argument was rejected by the Court of Appeals stating, "the crux of

10  appellant's argument is that they did not know the settlement decree would be to their detriment.

11  But surely they knew the risks.  To protect their interests, appellants should have joined the

12  negotiations before the suit was settled.  It is too late to reopen this action." *Id.*

13       In *Lane v. Facebook, supra*, the District Court also denied the Intervenor's motion as

14  untimely, rejecting the arguments that the proposed Intervenors were not aware that the action

15  against Facebook might affect their rights.  The Proposed Intervenors had sued Blockbuster as a

16  defendant in Texas but had not named Facebook in the Texas litigation.  The *Lane* court found that

17  the proposed Intervenors knew that Blockbuster was named as a defendant . . . and that the same

18  alleged wrongful acts, as well as the [same laws] were at issue." *Id* at *3.  Accordingly, the

19  "proposed Intervenors were on notice that any rights they had under the first filed rule were being

20  impaired far earlier than [the *Lane* settlement] meaning that virtually all of the activities engaged in

21  by the parties in [*Lane*] took place after the time proposed Intervenors should have acted to

22  preserve any rights they may have enjoyed." *Id.* at *3 N.8.  The opposition argues that Roman was

23  on notice that the *Cohorst* action might affect her rights as soon as the *Cohorst* complaint (labeled

24  as a "copycat") was filed and also named BRE as a defendant with Level One.

25       Roman relies upon *United States v. Carpenter* 298 F.3d 1122 (9th Cir. 2002) to support the

26  position that her post-settlement intervention is timely.  *Carpenter* is not controlling since it

27  specifically limited its holdings to intervention in actions where the government is a settling party

28  since citizens are entitled to rely on their government.  *Id.* at 1125.  The Ninth Circuit has

-10-

**REPORT AND RECOMMENDATION**

1   distinguished *Carpenter* in other decisions which denied post-settlement intervention motions

2   involving private parties explaining "those cases did not involve a claim of failure of government

3   agency to represent its citizens." *Id.* (citing *County of Orange v. Air California, supra* and *Alaniz v.*

4   *Tillie Lewis Foods, supra*).

5          Applying the Ninth Circuit's three factors to determine whether Roman's motion for

6   intervention is timely and considering the procedural history of the *Roman* and *Cohorst* cases and

7   the relevant case authority, the Special Master recommends that the Court find Roman's motion to

8   be untimely.  It is patently clear that the motion would prejudice the other parties at this stage of the

9   proceedings.  *United States v. Alisal Water Corp., supra*; *R&G Mortg. Corp. v. Federal Home Loan*

10  *Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009).  Further Roman has not provided the Special Master with

11  sufficient reason(s) for the length of delay since being advised of Level One's involvement in

12  October-November 2010 and the *Cohorst* complaint filing on December 9, 2010.  Finally, the

13  Special Master rejects Roman's argument that her motion for intervention is timely simply because

14  it was filed shortly after preliminary approval of the class action settlement on May 4, 2011 as

15  discussed above.  Too much water had passed under the bridge by that time for her motion to be

16  deemed timely.

17         **E.        Whether Roman's Interest will be Adequately Represented by the Parties**

18                   **to the Action**

19         The legal adequacy of the class representatives is determined by the resolution of two

20  questions: "(1) do the named Plaintiffs and their counsel have any conflicts of interest with other

21  class members; and (2) will the named Plaintiffs and their counsel prosecute the action vigorously

22  on behalf of the class?" *Hanlon v. Chrysler, Corp.* 150 F.3d 1011, 1020 (9th Cir. 1998).  Roman

23  has not provided the Special Master with any evidence to suggest that the class representatives have

24  any conflicts or cannot adequately represent the other class members.  Roman's Complaint in

25  Intervention pleads the same claims for relief on behalf of a class that is fully covered by *Cohorst's*

26  First Amended Complaint.  As a class member, Roman comes within the scope of the certified class

27  and there is no need to name additional class representatives.  See *Stenson v. Blum*, 476 F.Supp.

28  1331 (SD.N.Y. 1979).  Roman does not contend that the three class representatives may not apply

                                        -11-

1   for and receive an incentive award.  See *Cook v. Nicdent*, 142 F.3d 1004, 1016 (9th Cir. 1998).

2   Roman has not demonstrated that the three class representatives will be unable to represent her

3   interests.  As such, the Special Master recommends that Roman not be added as a class

4   representative or named plaintiff in the *Cohorst* action.

5        Roman's principal claim is against present class counsel as being inadequate to represent

6   her interests.  The Special Master believes that Roman will be best served in making her claims as

7   an objector rather than an intervenor.  As an objector, Roman will have an opportunity to make her

8   claims regarding the adequacy of the settlement terms.

9        Roman argues repeatedly that class counsel is inadequate to protect her interests based upon

10   her allegation that her prior filed class action in Los Angeles was victimized by a "reverse auction"

11   between class counsel and the defendants.  A reverse auction is said to occur when the defendant in

12   a series of class actions picks the most ineffectual class lawyers to negotiate a weaker settlement

13   than could have been negotiated by other class counsel.  The fact that a class action has settled

14   while a parallel class action is pending in of itself is insufficient to support a conclusion that a

15   reverse auction took place.  See *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091,

16   1099-1100 (9th Cir. 2008).

17        Roman's only assertion of "underhanded activity" by class counsel stems from her claim

18   that the original *Cohorst* was a "copycat" from her Los Angeles lawsuit.  This claim alone cannot

19   support the indictment of a "reverse auction."

20        A closer analysis of the two respective class actions reveals a different scenario where

21   Roman's class action was filed against only BRE and was not amended to add Defendant Level

22   One until January 26, 2011 and not served until over a month after the *Cohorst* parties had executed

23   a term sheet on February 9, 2011.  It would appear that Level One had no opportunity to determine

24   which class lawyers would negotiate the weaker settlement.  Further, Roman has not provided the

25   Special Master any evidence that she ever engaged in settlement discussions with either BRE or

26   Level One's attorneys prior to the mediation sessions conducted in *Cohorst* in late January and

27   early February 2011.  The District Court has already found that class counsel's prior experience in

28   prosecuting class actions is able to service the litigation needs of the class and to prosecute their

-12-

1  claims.  Were *Roman's* claims be deemed sufficient no settlement could ever occur in

2  circumstances of parallel or multiple class actions and none of the competing cases could settle

3  without being accused by another of participating in a collusive reverse auction.  *Negrete, supra,*

4  523 F.3d at 1099.  To the extent that Roman is objecting to settlement terms agreed to by *Cohort*

5  counsel, her objections is not a basis for intervention.  "When a proposed intervenor ... has vested

6  (her) claim for intervention entirely over litigation strategy or legal tactics, courts have been

7  hesitant to accord the applicant full-party status."  *League of United Latin Am. Citizens v. Wilson*,

8  131 F.3d 1297, 1306 (9th Cir. 1997).  The same result was reached in *Glass v. UBS Financial*

9  *Services, Inc.*, WL47436 (N.D. Cal. 2007) on similar allegations of inadequate counsel as being

10  made by Roman.

11      The Special Master recommends that the Court find that Roman has failed to establish the

12  necessary inadequate representation element required by Rule 24(a).

13

14  **F.      Whether Roman Should be Entitled to Conduct Discovery as a Proposed-**
       **Intervenor or Objector**

15

16      Roman has requested, should her intervention motion be denied, that she be given the right

17  to conduct discovery as an objector for the purpose of conducting "adversarial" discovery from the

18  Defendants.  Roman recognizes that "class members who object do not have an absolute right to

19  discovery; the Court may, in its discretion, limit discovery or presentation of evidence to that which

20  may assist it in determining the fairness and adequacy of the settlement."  *Hemphill v. San Diego*

21  *Ass'n. of Realtors*, 225 F.R.D 616, 619 (S.D. Cal. 2004).  'Objectors should be allowed

22  "meaningful participation in the Fairness Hearing without unduly burdening the parties or causing

23  an unnecessary delay.  *Id.* (quoting *Domestic Air Transp. Antitrust Litg.,* 144 F.R.D. 421, 424 (N.D.

24  GA. 1992).

25      The Court cannot determine whether the record in support of the settlement warrants final

26  approval until the parties present their evidence in support of approval in their final approval

27  motions which are not due until August 29, 2011.  The Court is also presently unaware of the

28  number and interests of other potential objectors until the Fairness Hearing.  Roman may be the

REPORT AND RECOMMENDATION

1  only objector or she could still decide to opt out of the settlement until August 9, 2011.  Given the

2  prejudice to the settling parties and the added cost of the settlement administration from Roman's

3  adversarial discovery, the Special Master recommends that Roman's request to conduct discovery

4  as an objector be denied without prejudice until after the Fairness Hearing.

5        The Special Master had considered providing Roman with the due diligence discovery

6  provided to class counsel prior the settlement being finalized.  However, as the Opposition pointed

7  out at the motion hearing, that discovery was provided to counsel under the mediation privilege

8  which would raise other issues and additional costs of administration.

9  **G.**     **Other Issues**

10        Roman raised at the July 18, 2011 motion hearing that the Special Master may have a

11  conflict in this case from his participation in the mediation sessions which resulted in a settlement.

12  This argument was raised after Roman had received the Special Master's tentative decision which

13  recommended the denial of her intervention motion on July 15, 2011.

14        Roman has participated in three prior hearings before the Special Master and has not saw fit

15  to raise this issue previously.  The Special Master does not believe that any conflict of interest

16  exists and the Opposition argued that Roman clearly has waived any objections on this ground.

17  **H.**     **Recommendation**

18        As discussed in detail above, the Special Master recommends that the Court find that

19  Roman has failed to sustain her burden to satisfy three elements required by the Ninth Circuit to

20  allow intervention "as of right" under Rule 24(a)(2).  Further, Roman without intervention, may not

21  conduct formal discovery at this stage of the proceedings.

22       SO RECOMMENDED.

23  DATED: ___7/19/11___

24                       Special Master Judge Herbert B. Hoffman

25                       Judge of the California Superior Court (Ret.)

26

27

28

**REPORT AND RECOMMENDATION**

## PROOF OF SERVICE

I am employed in the county of Orange, State of California.  I am over the age of eighteen and not a party to the within action, and my business address is: 1851 E. First Street, Suite 1600, Santa Ana, CA 92705

On July 19, 2011, I served the following document: **REPORT AND RECOMMENDATION BY SPECIAL MASTER RE: MOTION TO INTERVENE BY PROPOSED INTERVENOR-PLAINTIFF LUMINITA ROMAN,** on the interested parties in the matter of **COHORST, ET AL. VS. LEVEL ONE, LLC, ET AL.** by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Howard Edwin King, Esq.
Law Offices of Howard Edwin
King Jr.
402 W Broadway, Suite 860
San Diego, CA 92101
hedkinglaw@aol.com

Patrick N. Keegan, Esq.
Keegan & Baker, LLP
6255 Lusk Blvd., Suite 140
San Diego, CA 92121
pkeegan@kmb-law.com

James Frantz, Esq.
Frantz Law Group
402 West Broadway, Suite 860
San Diego, CA 92101
jpf@frantzlawgroup.com

Paul R. Kiesel, Esq.
Jeffrey Koncious, Esq.
Kiesel, Boucher & Larson LLP
8648 Wilshire Blvd.
Beverly Hills, CA 90211-2910
kiesel@kbla.com
koncious@kbla.com

Tim J. Vanden Heuvel, Esq.
Jon P. Kardassakis, Esq.
Lewis, Brisbois, Bisgaard &
Smith, LLP
701 B Street, Suite 1900
San Diego, CA 92101
vanden@lbbslaw.com
kardassakis@lbbslaw.com

Sheldon Eliot Eisenberg, Esq.
Drinker, Biddle & Reath, LLP
1800 Century Park E, Suite 1400
Los Angeles, CA 90067
sheldon.eisenberg@dbr.com

Bronwyn Fitzgerald Pollock, Esq.
Evan M. Wooten, Esq.
Mayer Brown, LLP
350 South Grand Avenue,
25th Floor
Los Angeles, CA 90071-1503
bpollock@mayerbrown.com
ewooten@mayerbrown.com

_X_   I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.

_X_   By electronic mail

___   By Facsimile, on _____ at approximately _____. I faxed such document from our facsimile telephone number (714) 834-1344 to the offices of the parties as stated on the service list.  The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

_X_   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

___   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **July 19, 2011,** at Santa Ana, California.

Rachelle Snow
Judicate West