**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| ROSEMARY COHORST, on behalf of themselves and all others similarly situated, | CASE NO. 10cv2666 JM(BGS) |
|---|---|
| Plaintiffs, | ORDER ADOPTING, AND DENYING OBJECTIONS TO, REPORT AND RECOMMENDATION RE: DENIAL OF MOTION TO INTERVENE; DENIAL OF MOTION FOR RECONSIDERATION |
| vs. | |
| BRE PROPERTIES, INC.; L1 HOLDING, INC; LEVEL ONE, LLC; and REAL PAGE, INC., | |
| Defendants. | |

Proposed Intervenor, Luminita Roman ("Roman"), objects to the Report and Recommendation by Special Master Re: Motion to Intervene by Proposed Intervenor - Plaintiff Luminita Roman ("R & R") and seeks reconsideration of this court's Preliminary Approval Order. (Ct. Dkt. 26). Plaintiffs Rosemary Cohorst, Charmaine Griffith, and Deidre Quenell (collectively "Plaintiffs") and Defendants BRE Properties, Inc. ("BRE") and Level One, LLC ("Level One") oppose the Objections. The R & R, expressly incorporated herein, thoroughly and thoughtfully analyzed Roman's claims, the evidentiary record, and recommended the denial of the motion to intervene in its entirety. Having carefully considered the R & R, the court record, the arguments of counsel, and applicable authorities, the court adopts the R & R in its entirety, denies the Objections to the R & R, and denies the Motion for Reconsideration.

///

**BACKGROUND**

The court adopts the following background section, as primarily set forth in the R & R. (Ct. Dkt. 35).

PROCEDURAL HISTORY OF THE ROMAN ACTION

Roman v. BRE Properties, Inc. was originally filed in the Los Angeles Superior Court on May 20, 2010. On June 9, 2010, the Superior Court designated the Roman action complex and served a "Notice of Complex Designation" on June 17, 2010. On June 30, 2010, Superior Court Judge Ann I. Jones entered an "Initial Status Conference Order" which stayed the proceedings to assist the Court and the parties in managing the complex case. Judge Jones set an initial status conference on October 8, 2010 and ordered the parties to meet and confer and file a joint report which included "whether additional parties are likely to be added."

On October 1, 2010, Roman and BRE filed a "Joint Initial Status Conference Report" with Superior Court Judge Jane Johnson to whom the Roman case had been reassigned. The report reflects that counsel for Roman and BRE had previously met and had discussed that a number of other potential parties to the case were identified. The initial status conference was held before Judge Johnson who continued the stay on discovery except the stay was lifted for discovery designed to identify potential additional parties to the Roman action.

On November 12, 2010, counsel for BRE provided Roman's counsel with a declaration by Tyler L. Kemmer regarding BRE's telephone call intake practices including the involvement with alleged recording of telephone calls from its customers by Level One, including telephone calls made by Roman in April 2010 regarding BRE's Alessio Property in Los Angeles (Paragraph No. 14). Mr. Kemmer was the Vice President of Operations Management for BRE Properties, Inc. The Special Master requested a copy of the declaration on June 3, 2011 from Attorney Evan Wooten since it was referred to by counsel for Roman in the Ex Parte application.

On December 9, 2010, BRE filed notices of Related Case in Roman and Cohorst state court actions which states that the Cohorst case was filed on or about November 17, 2010 in the San Diego Superior Court and was assigned to Judge Robert P. Dahlquist in the North County Division. The Notice of Related Case also states that both actions assert purported violations of California Penal

1 Code section 630, et seq. asserted by California residents in connection with the alleged recording of
2 telephone calls regarding the rental of BRE residential properties.

3  On January 3, 2010, Judge Johnson ordered the <u>Roman</u> and <u>Cohorst</u> actions related, which was
4 served on Roman's counsel by mail on January 5, 2011.  However, on December 27, 2010, Level One
5 had removed the <u>Cohorst</u> action to the Federal Court in San Diego mooting Judge Johnson's order
6 finding the case related.

7  On January 7, 2011, Roman and BRE filed a "Joint Status Conference Report" with Judge
8 Johnson which stated that Level One had removed the <u>Cohorst</u> action to Federal Court and that,
9 "Plaintiff is considering amending the complaint to add additional business entities as DOE
10 Defendants."

11  On January 26, 2011, Roman served counsel for BRE with an Amendment to her Complaint
12 to substitute Level One for Defendant DOE 2 as well as another amendment adding Multi-Family
13 Technology Solutions, Inc. as an additional Defendant.

14  On April 11, 2011, Judge Johnson held a status conference in the <u>Roman</u> action where the
15 Court was informed that Level One intended to remove the <u>Roman</u> action to Federal Court in Los
16 Angeles.  Judge Johnson [and counsel for Roman] was also informed that a settlement had been
17 reached in the <u>Cohorst</u> action.  Judge Johnson continued the existing stay on discovery and set a
18 further status conference for April 26, 2011.

19  On April 11, 2011, Roman filed a Request for Dismissal of Level One from the <u>Roman</u> action,
20 which was entered the same day.  On April 12, 2011, Level One, without knowledge of the dismissal,
21 removed the <u>Roman</u> action to the Federal Court in Los Angeles.

22  The removed <u>Roman</u> case to the Federal Court in Los Angeles was assigned to the Honorable
23 A. Howard Matz, United States District Court Judge.  Roman filed a Motion to Remand the case to
24 the Los Angeles Superior Court primarily because Level One, LLC was dismissed on April 11, 2011
25 and the removal to the Federal Court pursuant to the Class Action Fairness Act ("CAFA") was
26 improper.

27  Level One filed an Opposition to Roman's Motion to Remand on the grounds that Level One's
28 dismissal was without judicial authority and without force or effect.  Level One has also filed a Motion

to Dismiss the Roman case based upon the settlement in the Cohorst case and the preliminary Approval Order signed by Judge Miller on May 4, 2011. Both motions were scheduled to be heard by Judge Matz on June 27, 2011.

During the *Ex Parte* hearing on June 7, 2011, Roman's counsel, Paul R. Kiesel, represented that he intended to dismiss the Roman action in Los Angeles and that Roman will either be an intervenor or an objector in the Cohorst action going forward. On June 10, 2011, a Stipulation of Dismissal in Roman was executed by all counsel and submitted to the Federal Court.

PROCEDURAL HISTORY OF THE COHORST ACTION

On November 17, 2010, Rosemary Cohorst filed a punitive class action in the San Diego Superior Court for the same causes of action as those in the *Roman* case. In addition to naming BRE as a Defendant, the Cohorst Plaintiffs named and immediately served Level One. On December 9, 2010, BRE filed a Notice of Related Case in both the Roman and Cohorst actions.

On December 27, 2010, Level One removed the Cohorst case to the Federal Court in San Diego where it was assigned to the Honorable Jeffrey T. Miller, United States District Judge. After the removal to Federal Court, the parties in Cohorst participated in two days of private mediation before the present Special Master on January 21, 2011 and February 1, 2011. The parties reached a tentative agreement on the second day of mediation and executed a term sheet on February 9, 2011 for a class- wide settlement, subject to confirmatory discovery. The Settlement Agreement and Release dated as of February 9, 2011 encompasses a twelve-state class ("two-party consent states") and would completely subsume all claims alleged in the Roman action against all Defendants in that action.

The parties to the Cohorst action jointly filed a Motion for Preliminary Approval of the Class Action Settlement on April 29, 2011 [Doc. No. 24]. Finding the settlement to be fair, proper and reasonable, Judge Miller preliminarily approved the settlement on May 4, 2011 [Doc. No. 25].

Judge Miller's May 4, 2011 Order of Preliminary Approval instructed the Claims Administrator to create a website giving notice of the settlement no later than May 27, 2011; mandated publication of the settlement notice in USA Today three times prior to June 10, 2011; and ordered the Claims Administrator to provide individualized email notice to the 1.1 million class members with

known email addresses no later than June 10, 2011.  Finally, the May 4, 2011 Order set a deadline for objecting to the settlement on August 9, 2011 and the Final Fairness Hearing for September 8, 2011.

NATURE OF ACTION

The essence of Plaintiffs' claim is simply stated:  Defendants allegedly violated California's constitutional right to privacy and the Privacy Act, Cal.Penal Code §630, et seq., by monitoring, recording, or eavesdropping on telephonic conversations without the consent of all parties. In lieu of actual damages, Plaintiffs seek an award of statutory damages pursuant to Cal. Penal Code §637.2 (permitting award of statutory damages in the amount up to $5,000).  The certified class consists of

> All persons (i) who, while physically located in or residing in California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, Nevada, New Hampshire, Pennsylvania, or Washington, made or received telephone calls that were handled by any Defendant between January 1, 2003 and February 9, 2011 and (ii) who did not receive notice that their telephone conference was being recorded or monitored.

(Ct. Dkt. 26).

By way of context, BRE contracted with Level One "to answer its incoming calls and make outgoing calls for prospective renters for its advertisements for apartments for rent for its properties in California." (First Amended Complaint "FAC" ¶6). Level One recorded the conversations without first obtaining consent from the consumer.  The FAC seeks statutory damages and injunctive relief.

On May 6, 2011 the court entered its order adopting the Special Master's report:  Order for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). (Ct. Dkt. ¶26). Pursuant to that agreement, Defendants will pay $5.5 million into a common fund, less an award of attorney's fees not to exceed $1.65 million. Pursuant to a stated formula, the maximum award to each class member is $5,000, depending on the state of residence of the class member.  (Preliminary Approval Order, Ct. Dkt. 26, §H).

**DISCUSSION**

STANDARD OF REVIEW

In reviewing the Special Master's R & R, the court "must decide de novo all objections to findings of fact made or recommended by a master."  Fed.R.Civ.P. 52(f)(3).

MOTION TO INTERVENE

Proposed Intervenor seeks to intervene in this action as a matter of right. (Motion at 9:25 - 17:6). Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention. Under Rule 24(a), intervention "shall be permitted when the applicant claims an interest which may, as a practical matter, be impaired or impeded by disposition of the pending action, and that interest is not adequately represented by existing parties." Under Rule 24(b), intervention may be allowed in the court's discretion when the applicant's claim and the primary action involve a common question of law or fact, <u>and</u> allowing intervention "will not unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24. In either case, Rule 24 has traditionally been construed liberally in favor of applicants for intervention. See <u>Washington State Bldg. & Construction Trades Council v. Spellman</u>, 684 F.2d 627, 630 (9th Cir. 1982).

**Timeliness**

An application to intervene, whether as of right or permissive, must be timely. A Rule 24 motion can be granted only "upon timely application." <u>Yniguez v. Arizona</u>, 939 F.2d 727, 731 (9th Cir. 1991). The determination of 'timeliness' is left to the sound discretion of the court. <u>Id</u>. A potential intervenor must act "as soon as he knows or *has reason to know* that his interests might be adversely affected by the outcome of the litigation." <u>California Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>, 309 F.3d 1113, 1120 (9th Cir. 2002) (emphasis in original). In determining whether a motion for intervention is timely, the court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." <u>League of United Latin American Citizens v. Wilson</u>, 131 F.3d 1297, 1302 (9th Cir. 2997) (quoting <u>County of Orange v. Air California</u>, 799 F.2d 535, 537 (9th Cir.1986)). "[A]ny substantial lapse of time weights heavily against intervention." <u>League of United Latin American Citizens v,. Wilson</u>, 131 F.3d 1297, 1302 (9th Cir. 1997).

Upon de novo review, the court concludes that the motion to intervene is untimely. Roman has known of the existence of the present action for at least six months before filing the present motion. On May 20, 2010 Roman filed her action in Los Angeles Superior Court against only defendant BRE. The action, designated as complex, was stayed. Following an initial status conference before Superior Court Judge Jane Johnson, the stay on discovery was partially lifted,

1  permitting limited discovery to identify potential additional parties.  On November 12, 2010, BRE
2  provided notice to Roman of Level One's involvement with the alleged recording of telephone calls.
3  On December 9, 2010 BRE filed a notice of related case in <u>Roman</u> and <u>Cohorst</u>, providing official
4  notice that the <u>Cohorst</u> action was filed on November 17, 2010 in the San Diego Superior Court.

5  On January 26, 2011 Roman amended her complaint to substitute Level One for a Doe
6  Defendant, four months after learning of Level One's involvement in the alleged recording activities.
7  At an April 11, 2011 status conference before Judge Johnson, Level One represented that it intended
8  to remove the <u>Roman</u> action to
9  Federal Court.  At that time, the parties were also informed that a settlement had been reached in the
10 <u>Cohorst</u> action.  On the same day, Roman filed a request for dismissal of Level One from the <u>Roman</u>
11 action (in an apparent attempt to destroy diversity jurisdiction under CAFA, 28 U.S.C. §1332(d)(2)).
12 On April 12, 2011 Level One removed the action to the Federal Court in Los Angeles.  On June 10,
13 2011, Roman voluntarily dismissed her action.

14 Even after learning of the proposed settlement in <u>Cohorst</u> on April 11, 2011, Roman waited
15 until two weeks after entry of this court's May 4, 2011 Preliminary Approval Order before taking any
16 steps to intervene in this action.  The Preliminary Approval Order determined, among other things,
17 the settlement to be "fair, proper, falls within the range of reasonableness and appears to be
18 presumptively valid subject only to any objections that may be raised at the Final Fairness Hearing.
19 . . . ."  (Ct. Dkt. 26 at ¶4).  The Order of Preliminary Approval also set a final fairness hearing for
20 September 8, 2011, provided a schedule and mechanism for individuals seeking to object to the
21 settlement, approved issuance of notice to the class, and required publication of notice of the
22 settlement.

23 Under these circumstances, Roman seeks to intervene too late in the process.  Roman learned
24 of the existence of the <u>Cohorst</u> action on December 9, 2010 when BRE filed a notice of related case
25 in <u>Roman</u> and <u>Cohorst</u>.  After nine months of discovery limited to the identity of the Doe defendants,
26 on April 11, 2011 Roman learned that the <u>Cohorst</u> action settled.  By this point in time, no substantive
27 discovery had occurred in <u>Roman</u>, Roman had not engaged in any settlement discussions with BRE,
28 and, significantly, she learned that there had been a class-wide settlement reached in <u>Cohorst</u>.  Still,

1 she delayed seeking to intervene for another five weeks, during which this court entered its Order for
2 Preliminary Approval of Class Action Settlement.

3 Roman argues that she acted timely because she filed her motion to intervene within about two
4 weeks of entry of the court's Preliminary Approval Order. This argument misses the mark. Roman
5 knew of the existence of the Cohorst action at the latest when BRE filed a notice of related case on
6 December 9, 2010; yet took no action to intervene or otherwise assert her rights. Roman's application
7 to intervene after entry of the Preliminary Approval Order is untimely. See Alaniz v. Tillie Lewis
8 Foods, 527 F.2d 657 (9th Cir. 1978) (rejecting argument that the proposed intervention was timely
9 when intervenor sought to intervene after entry of a consent decree).

10 The second factor supports the court's determination that intervention at this late date would
11 cause significant prejudice. Pursuant to the Preliminary Approval Order, significant expenses in
12 providing notice to the class have already been incurred. In addition, class members and/or their
13 counsel are working towards preparing for the Final Hearing and the timely submission by August 9,
14 2011 of any objections to the settlement. Delay in proceeding with the established schedule will also
15 delay the Final Hearing and the distribution of settlement proceeds to class members.

16 Finally, with regard to the third factor, the reasons identified for the delay in seeking to
17 intervene are insubstantial. Roman does not explain why she delayed moving for intervention.
18 Rather, she argues, in conclusory fashion, that she did not learn of the "inadequate terms of the
19 settlement," (Motion at p.11:21-22), until after the entry of the Preliminary Approval Order. Roman
20 does not explain why she waited from December 9, 2010 (the date she formally learned of the
21 existence of the Cohorst action) or from April 11, 2011 (the date Roman was informed that Cohorst
22 had settled), until May 19, 2011, the date she filed the motion to intervene, before seeking to assert
23 any claim in this action. As consumer class counsel know, once a consumer class action reaches a
24 settlement, the court is obligated to diligently implement the procedures identified in Rule 23(e) of
25 the Federal Rules of Civil Procedure.[1]

26

---

27
28 [1] Roman characterizes as "plagiarism" much of the wholesale copying of her complaint in the Cohorst action. The court notes that one hallmark of consumer class actions is that they frequently involve multiple nearly identical complaints. Roman simply fails to establish that the copying of complaints by other consumer class action attorneys is in any manner wrongful.

1    In sum, upon de novo review, the court finds that the motion to intervene is untimely.

2    **Intervention as a Matter of Right**

3    Roman argues that she may intervene in this action as a matter of right. (Motion at p.9:25-17:6). A party satisfies the requirements for intervention as a matter of right upon showing: "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interests must not be adequately represented by the existing parties in the lawsuit." Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 817 (9th Cir. 2001). The court accepts as true the non-conclusory allegations made in support of a motion to intervene. Id. at 819.

12   In her argument, Roman argues that the third factor is satisfied "in that she has a significantly protectable interest which will be impaired by the disposition of this action." (Motion at p.15:18-19). Fatal to her claim, however, she fails to identify how resolution of this action will impair or impede her ability to protect her interests. Roman is able to opt-out of the class and pursue her own damages action against Defendants. Alternatively, Roman may raise any objections to the settlement at the time of the Final Hearing. In Davis v. J.P. Morgan Chase & CO., 2011 WL 1327860 (W.D. N.Y. April 6, 2011), putative class members brought a parallel class action and sought intervention in order to propound discovery and to oppose the settlement. The court denied the motion for intervention, noting that "[i]ntervention is not necessary here to protect the proposed Intervenor' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties." Id. at *2.

23   Accordingly, the court concludes that Roman fails to demonstrate that she is entitled to intervene as a matter of right in this action.

MOTION FOR RECONSIDERATION

Roman moves the court for reconsideration of its Preliminary Approval Order. The court denies the motion for two reasons. First, Roman, for the above-stated reasons, lacks standing to bring

1  the motion - - she is not a representative party and any objections to the settlement can be raised at the
2  time of the Final Hearing. Second, reconsideration is generally appropriate "if the district court (1)
3  is presented with newly discovered evidence, (2) committed clear error or the initial decision was
4  manifestly unjust, or (3) if there is an intervening change in controlling law. . . . There may also be
5  other, highly unusual circumstances warranting reconsideration." School Dist. No. 1J, Multnomah
6  County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted). Roman argues
7  that her recently discovered evidence warrants reconsideration of the Preliminary Approval Order.
8  Roman argues that the court was not "advised of the procedural and factual infirmities surrounding
9  its terms, all of which lend support to Ms. Roman's claims that a reverse auction has taken place and
10 the Settlement inadequate." (Motion at p.18:21-23). The present settlement was reached following
11 two days of arm's length negotiations before a neutral mediator and after the Cohorst plaintiffs
12 conducted confirmatory discovery. Roman argues, in conclusory fashion, that the settlement was the
13 result of a reverse auction and that the Cohorst plaintiffs were the lowest bidders. However, Roman
14 acknowledges that, during the 11- month life of her action (from May 2010 until dismissal in June
15 2011), she did not conduct any substantive discovery, she dismissed the alleged primary wrongdoer
16 (Level One) from her action, and she never entered into any settlement discussions with Defendants.
17 Roman's conclusory arguments fail to establish any newly discovered evidence, intervening change
18 in law, or manifest injustice warranting reconsideration. Moreover, the court notes, Roman may raise
19 any objections to the settlement at the time of the Final Hearing or pursue her own action

20  In sum, the court adopts the R & R in its entirety, denies the Objections, and denies the motion
21 for reconsideration.

22  **IT IS SO ORDERED.**

23 DATED: August 5, 2011

24                                          _____
25                                          Hon. Jeffrey T. Miller
                                            United States District Judge
26 cc:       All parties

27

28

- 10 -                                                      10cv2666